# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| WILLIAM A. BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-cv-1243 |
| | ) | Chief Judge Haynes |
| GENERAL REVENUE CORPORATION, | ) | |
| UNITED AID FUND, INC., and | ) | |
| SALLIE MAE SERVICING | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## M E M O R A N D U M

Plaintiff, William A. Boyd, filed this <u>pro se</u> action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 <u>et al.</u>, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against the Defendants: General Revenue Corporation ("GRC"), United Student Aid Fund, Inc. ("USA Funds") and Sallie Mae Inc.[1] ("Sallie Mae"). Plaintiff's claims are that Defendants violated the TCPA and the FDCPA by their repeated telephone calls to Plaintiff's home and work as well as to Plaintiff's cellular telephone to collect an allegedly nonexistent debt. Plaintiff seeks damages and injunctive relief.

Before the Court are the Defendant GRC and Defendant Sallie Mae's motions for summary judgment. (Docket Entry Nos. 40 and 54). Defendant Sallie Mae contends, in sum, that: (1) Plaintiff's vague factual allegations do not allege any wrongful action or omission on the part of

---

[1]Defendant Sallie Mae notes that Plaintiff's complaint improperly named Sallie Mae, Inc. as Sallie Mae Servicing. (Docket Entry No. 40 at 1).

1

Sallie Mae; (2) that the statute of limitations precludes Plaintiff's claims against Sallie Mae; and (3) Sallie Mae is not a "debt collector" within the meaning of the FDCPA. (Docket Entry No. 41). Defendant GRC contends, in sum: (1) that the FDCPA did not require GRC to validate Plaintiff's debt; (2) that GRC's business records reflect that GRC did not use an automated system to call Plaintiff; (3) that the TCPA does not preclude GRC from manually calling Plaintiff without Plaintiff's permission; and (4) that the TCPA does not prohibit GRC from manually leaving Plaintiff a voice mail without his permission.

In response, Plaintiff contends, in essence: that he never received a notice of his validation rights from GRC; that Plaintiff sent GRC a satisfactory request for validation of the debt within thirty days of discovery; that Plaintiff sent GRC a satisfactory notice to cease communication; and that Plaintiff has over forty calls from GRC recorded. (Docket Entry No. 64).

For the reasons set forth below, the Court concludes that Plaintiff lacks factual support for his claims. Thus, the Defendants' motions for summary judgment should be granted.

## A. Findings of Fact[2]

Sallie Mae originates and services student loans. (Docket Entry No. 41-1, Ungvarsky Affidavit at ¶ 3). On August 18, 2004, Plaintiff executed a Federal PLUS Loan application and master promissory note with Sallie Mae. Id. at ¶ 4. The guarantor of the loan was USA Funds. Id.

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that there are some factual disputes, but those disputes are not material given the material facts conceded by the Plaintiff. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

at ¶ 3. Thereafter, Sallie Mae issued Plaintiff a Federal PLUS Loan and disbursed the funds directly to the educational institution. Id. at ¶ 5. The terms of the Federal PLUS loan required Plaintiff to repay the loan. Id. at ¶ 6. At the time Sallie Mae began servicing Plaintiff's loan, the loan was not in default. Id. at ¶ 7. On October 24, 2006, Plaintiff defaulted on the loan. Id. at ¶ 8. Sallie Mae's business records reflect that Salle Mae did not make any telephone calls to Plaintiff following the payment of the default claim. Id. at ¶ 10. Salle Mae filed a default claim with USA Funds. Id. at ¶ 8. USA Funds paid the default claim on February 23, 2007. Id. at ¶ 9.

On October 3, 2010, USA Funds placed Plaintiff's loan for collection with GRC. (Docket Entry No. 55-1, Root's Affidavit at ¶ 4). GRC is a debt collector. Id. at ¶ 3. On October 4, 2010, GRC mailed an initial collection letter, including a notice of validation rights under the FDCPA, to Plaintiff at the address listed on his account: 160 Queens Lane, Nashville, Tennessee 37218. Id. at ¶ 5. The letter stated, in pertinent part:

> Dear William A. Boyd:
>
> Your guaranteed education loan is currently in default. Your guarantor, United Student Aid Funds, Inc., was required to purchase the account from your lender under the terms of the guarantee agreement. Since your loan is in default, your loan has been placed with our agency, General Revenue Corporation for collection.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office with obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> You may also submit a request in writing within 30 days after receiving this notice to review the legal enforceability or past status of your loan obligation. You may request a review if you can prove your loan was not past-due with your lender, the

loan balance is incorrect, or you did not incur this debt. You cannot receive a review for any one of the following reasons:

- You failed to pay your lender
- You failed to complete your education and/or were dissatisfied with the school you attended.
- You were unable to find employment in the field for which the school prepared you

Submit your written request for a review to the above Correspondence Address.

Without a dispute, failure to pay the account in full, agree to a satisfactory repayment arrangement, or utilize another recovery option as outlined on the attached insert, may result in additional collection efforts, . . .

(Docket Entry No. 55-2, Collection Letter). GRC did not receive any notices that the initial collection letter was "undeliverable" by the United States Postal Service. (Docket Entry No. 55-1, Root's Affidavit at ¶ 6).

GRC also made telephone calls to Plaintiff to contact him about his defaulted loan. GRC made these calls to Plaintiff's cell telephone number (615-497-0640), home telephone number, and a work number. Id. at ¶ 7. GRC debt collectors manually dialed each call to Plaintiff's cell telephone number. Id. at ¶ 8. On December 3, 2010, Plaintiff called GRC two times and spoke with a GRC collector, advising the collector that he was unable to make arrangements for the debt that day. Id. at ¶ 9. After December 3, 2010, Plaintiff did not answer any calls from GRC or return any calls from GRC regarding the debt. Id.

On July 8, 2011, Plaintiff sent the following letter to GRC:

Collection Department,

Thank you for your recent inquiry. This is not a refusal to pay, but a notice that your claim is disputed.

This is a request for validation made pursuant to the Fair Debt Collection Practices Act.

Please complete and return the attached disclosure request form.

Please be advised that I am not requesting a "verification" that you have my mailing address, I am requesting a "validation:" that is, competent evidence that I have some contractual obligation to pay you.

You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under federal and state law.

Your failure to satisfy this request within the requirements of the Fair Debt Collection Practices Act will be construed as your absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorneys fees.

(Docket Entry No. 53-3, Plaintiff's First Letter to GRC).

On August 30, 2011, Plaintiff sent a second letter to GRC, stating the following:

Dear Collection Department,

I, W. Allen Boyd, Affiant herein, served Respondent a Validation of Debt Letter and enclosed a Creditor Disclosure Statement for you to sign and return to Affiant within thirty (30) days of receipt of Validation of Debt Letter. Said Validation of Debt Letter is incorporated herein by references as if fully incorporated herein.

Respondent was noticed that Respondent's failure to sign the Creditor Disclosure Statement and return it to Affiant in a timely manner pursuant to the Fair Debt Collection Practices Act would be Respondent's agreement to all of Affiant's claims made in Affiant's Validation of Debt Letter by TACIT PROCURATION, State Decisis.

Respondent failed to timely sign and return the Creditor Disclosure Statement to Affiant.

Respondent is in Fault.

Affiant is granting Respondent ten (10) more days to provide Affiant with the signed Creditor Disclosure Statement served on Respondent.

Respondent's failure to timely provide Affiant with the signed Creditor Disclosure Statement will place Respondent in Default, and Respondent's Default will be an agreement and stipulation to all the assertions, claims, and agreements in Affiant's "Notice of Claim" through TACIT PROCUTATION, Stare Decisis, and the doctrine of ESTOPPEL BY SILENCE will apply.

Respondent's Default is Respondent's agreement with Affiant that Respondent will fully discharge the alleged debt and will be liable to Affiant for any adverse reporting to a Credit Reporting Agency.

(Docket Entry No. 53-4, Plaintiff's Second Letter to GRC).

On September 13, 2011, Plaintiff sent a third letter to GRC, stating:

Dear Collection Department

I, W. Allen Boyd, Affiant herein, served Respondent a Validation of Debt Letter and a Creditor Disclosure Statement for Respondent to sign and return to Affiant within thirty (30) days to dispute said claims or admit said claims by silent. Said Validation of Debt Letter and Creditor Disclosure Statement are incorporated herein by reference as if fully incorporated herein.

Respondent failed to sign and timely return the Creditor Disclosure Statement to Affiant to validate the claims.

Respondent was in Fault.

Affiant then served Respondent with a "Notice of Fault and Opportunity to Cure Fault", incorporated herein by references as if fully incorporated herein, and granted Respondent ten (10) more days to cure said fault by providing Affiant with the signed Creditor Disclosure Statement previously served on Respondent.

Respondent again failed to provide Affiant with the signed Creditor Disclosure Statement previously served on Respondent.

Respondent is now in Default and Respondent's Default, pursuant to the Validation of Debt Letter, created *tacit agreements* between Affiant and Respondent.

Respondent's Default created agreements between Respondent and Affiant that the alleged debt referenced by the above-numbered account is now fully discharged, Respondent will not turn over the alleged debt for collections and will not make adversary reports to a Credit Reporting Company without incurring substantial financial liability.

With this Notice of Default Affiant has exhausted Affiant's Administrative Remedies.

DEMAND TO PROVIDE NOTICE OF DISCHARGE

Affiant is making demand on Respondent to fully discharge the alleged debt or in the alternative, contact Affiant in writing via Notary Public at address shown on the Certificate

of Service page to resolve the matter and show cause why Affiant should not bring Respondent to court for failure to fully disclose the true nature of the alleged contract, violation of the contract, violation of the Truth in Lending Act, failure to provide consideration by failure to perform on the value of the contract, possible violation of the usury laws, and using the mail to collect on an unsubstantiated debt, and possible fraud, and other violations.

(Docket Entry No. 53-5, Plaintiff's Third Letter to GRC).

Sallie Mae and USA Funds responded to Plaintiff's letters on July 18, 2011 and September 20, 2011, as follows:

William A. Boyd
73 White Bridge Rd Ste 103-156
Nashville, TN 37205

Dear Sir or Madam,

We recently received an inquiry from you, however, we are unable to verify your identify or legal rights to the information you are requesting.

Please provide our office with the following information and return it to the address listed above.

*Customer's Name
*Customer's Social Security Number and/or Account Number
*Customer's Date of Birth
*Customer's Current Mailing Address
*A release signed by the customer which gives you permission to obtain information regarding their account.

The document(s) you submitted is being returned and can be re-submitted along with the information we requested for verification.

(Docket Entry Nos. 16-2 and 16-3, July 18, 2011 and September 20, 2011 Letters).

Plaintiff kept his own call log of calls he allegedly received from GRC and other unknown callers. Plaintiff's call log provides:

| Date | Time | Teletelephone Number | Caller/Company Name |
|---|---|---|---|
| 6-29-2011 | 10:02 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-1-2011 | 9:39 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-5-2011 | 7:37 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-7-2011 | 3:37 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-8-2011 | 9:12 am | 239-348-0452 | NONE |
| 7-11-2011 | 3:18 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-12-2011 | 4:26 pm | 866-632-6032 | NONE |
| 7-18-2011 | 1:10 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-27-2011 | 3:18 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-11-2011 | 4:57 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-13-2011 | 8:14 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-13-2011 | 8:15 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-13-2011 | 6:40 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-18-2011 | *blank or illegible entries* | | |
| 7-27-2011 | *blank or illegible entries* | | |
| 7-7-2011 | 11:16 pm | *blank or illegible entries* | |
| | 5:15 pm | 866-632-6032 | General Revenue Corp. |
| 7-20-2011 | 4:15 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 7-27-2011 | 6:26 pm | *blank or illegible entries* | |
| 7-25-2011 | *blank or illegible entries* | | Region Bank |
| 8-8-2011 | *blank or illegible entries* | | |
| 8-9-2011 | 12:56 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-10-2011 | 1:09 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-12-2011 | 11:32 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-16-2011 | 10:20 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-18-2011 | 12:46 pm | 866-632-6032 | Curtis/General Revenue Corp. |

| | | | |
|---|---|---|---|
| 8-22-2011 | 2:22 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-23-2011 | 5:02 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-24-2011 | 12:53 pm | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-25-2011 | 10:47 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-26-2011 | 8:59 am | 866-632-6032 | Curtis/General Revenue Corp. |
| 8-28-2011 | 4:35 pm | 800-253-0005 | General Revenue Corp. |
| 8-29-2011 | 10:49 am | 800-253-0005 | General Revenue Corp. |
| 8-29-2011 | 12:18 pm | 800-253-0005 | General Revenue Corp. |
| 8-29-2011 | 1:18 pm | 800-253-0005 | General Revenue Corp. |
| 8-29-2011 | 4:37 pm | 866-632-6032 | General Revenue Corp. |
| 8-30-2011 | 1:19 pm | 866-632-6032 | General Revenue Corp. |
| 8-31-2011 | 8:32 am | 866-632-6032 | General Revenue Corp. |
| 9-1-2011 | 12:56 pm | 866-632-6032 | General Revenue Corp. |
| 9-2-2011 | 11:03 am | 866-632-6032 | General Revenue Corp. |
| 9-6-2011 | 11:24 | 866-632-6032 | General Revenue Corp. |
| 9-9-2011 | 11:24 am | 868-450-8220 | ? |
| 9-12-2011 | 11:35 pm | 818-450-8220 | ? |
| 9-14-2011 | 12:35 | 866-632-6032 | Adrian/General Revenue Corp. |
| 9-14-2011 | 1:32 pm | 818-450-8220 | ? |
| 9-19-2011 | 1:00 pm | 866-632-6032 | Adrian General Revenue Corp. |
| 9-21-2011 | 4:16 | 800-253-0005 | General Revenue Corp. |
| 9-21-2011 | 5:27 pm | *blank or illegible entries* | General Revenue Corp. |
| 9-21-2011 | 8:07 pm | 877-907-4530 | Brandon/General Revenue Corp. |
| 9-26-2011 | 3:29 pm | 800-253-0005 | Brandon/General Revenue Corp. |
| 9-26-2011 | 4:50 | 800-253-0005 | Brandon/General Revenue Corp. |
| 9-26-2011 | 6:40 | 800-253-0005 | Brandon/General Revenue Corp. |
| 9-26-2011 | 7:55 | 800-253-0005 | Brandon/General Revenue Corp. |

(Docket Entry No. 1, Exhibit A at 7-12).

## B. Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989); see also Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Celotex Court:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he

respondent must adduce more than a scintilla of evidence to overcome the motion. . . . [and] must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby, 477 U.S. at 251, 255).  Moreover, the Sixth Circuit explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.'  Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
> * * *
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.  If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore,

> unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

> [I]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of."

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial

order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing

14

evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Id. at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law?

### 1. Fair Debt Collection Practices Act Claims

The purposes of the Fair Debt Collection Practices Act are to eliminate abusive debt collection practices by debt collectors, to insure the debt collectors refrain from using abusive debt collection practices, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e). The FDCPA prohibits: false representations about the

character, amount or legal status of a debt; use of false representations or deceptive means to collect

or attempt to collect any debt; and the collection of amounts not authorized by the agreement

creating the debt. Id. §§ 1692, 1692(e)(2)(A), 1692(e)(10), and 1692(f)(1). The FDCPA is a strict

liability statute. Edwards v. McCormick, 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001) (citing Frey

v. Gangwish II, 970 F.2d 1516 1518-19 (6th Cir. 1992)). Therefore, if Plaintiff's proof establishes

a violation of the FDCPA, summary judgment is appropriate.

The relevant provisions of the FDCPA that Plaintiff relies upon for his claims are as follows:

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except –

(1) to advise the consumer that the debt collector's further efforts are being terminated;
(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
(3) where applicable, to notify the consumer that the debt collector or credits intends to invoke a specified remedy.

15 U.S.C. § 1692c(c).

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

(a) Notice of debt; contents

Within five days after the initial consultation with a consumer in connection with the

collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will eb mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed Debt

If the consumer notified the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communication that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. 1692g(a)-(b).

The determination of whether there is a violation of FDCPA should be analyzed from the standpoint of the least sophisticated consumer. See Smith v. Transworld Sys., Inc., 953 F.2d 1025 (6th Cir. 1992). The purpose for using the "least sophisticated consumer" standard is to "ensure that

the FDCPA protects all consumers, the gullible as well as the shrewd." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). For each allegation of Defendants' wrongdoing, the Court must determine whether the least sophisticated consumer would be deceived. Smith, 953 F.2d at 1028.

Plaintiff's FDPCA claims are that: (1) Defendants placed forty-two (42) telephone calls to Plaintiff's cellular telephone after receiving Plaintiff's notice of validation letters in violation of 15 U.S.C. § 1692g; (2) Defendants placed telephone calls to Plaintiff's cellular telephone, failed to provide written notice of debt validation, and continued collection activity after receiving written notice from Plaintiff of disputed debt and to cease communications in violation of 15 U.S.C. § 1692(c); and (3) Defendants violated 15 U.S.C. § 1692e(10) by using false representations or deceptive means to collect or attempt to collect a debt or obtain information concerning a consumer.

Sallie Mae contends that Plaintiff's claim under the FDCPA fails because Plaintiff fails to make any allegations of Sallie Mae's conduct, act or omissions. (Docket Entry No. 41 at 5). Sallie Mae also points out that Plaintiff's proof lacks any references to any conduct by Sallie Mae. Moreover, Sallie Mae contends that even if Plaintiff did present some proof of Sallie Mae's unlawful conduct, Sallie Mae is not a "debt collector" within the meaning of the FDCPA. (Docket Entry No. 41 at 8). The Court concludes that each of Plaintiff's factual allegations relate only to GRC, not Sallie Mae. In addition, Plaintiff's proof fails to reflect any conduct, act or omission by Sallie Mae. The Court concludes that Defendant Sallie Mae's motion for summary judgment should be granted as to Plaintiff's claims under the FDCPA.

GRC contends that Plaintiff's FDCPA claim that GRC wrongfully placed forty-two teletelephone calls to Plaintiff's cellular telephone after receiving Plaintiff's notice of validation rights fails because Plaintiff's notice was outside of the thirty day notice period under the FDCPA.

(Docket Entry No. 55 at 5). The undisputed facts reflect that GRC sent Plaintiff a letter including a notice of validation rights on October 10, 2010. (Docket Entry No. 55-2, Collection Letter). GRC did not receive any indication that the initial collection letter was "undeliverable" by the United States Postal Service. (Docket Entry No. 55-1, Root's Affidavit at ¶ 6). Plaintiff did not respond in any manner to GRC's letter until July 8, 2011. Plaintiff's attempt to validate the debt occurred outside the thirty day period under the FDCPA. Thus, the Court concludes that Defendant's motion for summary judgment should be granted as to Plaintiff's claim under 15 U.S.C. § 1692g .

GRC also contends that Plaintiff's FDCPA claim that GRC called Plaintiff after receiving written notice to cease all communications fails because GRC did not receive any such notice. (Docket Entry No. 55 at 6). Under the FDCPA, to preclude GRC from communicating with Plaintiff, Plaintiff's should have submitted in writing a "refus[al] to pay a debt or that the [Plaintiff] wishe[d] the debt collector to cease further communication." 15 U.S.C. § 1692c(c). Plaintiff's letter of July 8, 2011 did neither, the letter merely stated "This is not a refusal to pay, but a notice that your claim is disputed." (Docket Entry No. 53-3). Moreover, Plaintiff's letters sent to GRC on August 30, 2011 and September 13, 2011 do not reflect any discernible refusal to pay or request to cease all communication. (Docket Entry Nos. 53-4 and 53-5). Thus, the Court concludes that Defendant's motion for summary judgment should be granted as to Plaintiff's claim under 15 U.S.C. § 1692c(c) should be granted.

Plaintiff's FDCPA claim that GRC engaged in false representations or deceptive practices fails for lack of proof as to GRC. (Docket Entry No. 55 at 7). In light of Plaintiff's failure of proof, the Court concludes that the Defendants' motion for summary judgment should be granted as to Plaintiff's claims under 15 U.S.C. § 1692e(10).

## 2. Telephone Consumer Protection Act

The Telephone Consumer Protection Act "protect[s] the privacy rights of citizens by restricting the use of the telephone network for unsolicited advertising." Charvat v. GVN Michigan, Inc., 531 F. Supp. 2d 922 (S.D. Ohio 2008) (quoting Worsham v. Nationwide Ins. Co., 772 A.2d 868, 872 (2001)). "In relevant part, the TCPA regulates the use of automated telephone equipment." Pugliese v. Prof. Recovery Serv., Inc., No. 09-12262, 2010 WL 2632562, *6 (E.D. Mich. June 19, 2010). The TCPA defined an automatic telephone dialing system as "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227 § (a)(1).

The relevant provisions of the TCPA that Plaintiff relies upon for his claims are as follows:

(b) Restrictions on use of automated telephone equipment

    (1) Prohibitions

    It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

        (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –

        . . .

            (iii) . . . cellular telephone service . . .

        (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission . . .

47 U.S.C. § 227.

"To state a claim under the TCPA for calls made to a cellular telephone, a plaintiff must establish that: (1) a call was placed to a cell or wireless telephone, (2) by the use of any automatic dialing system and/or leaving an artificial or recorded message, and (3) without prior consent of the recipient. 47 U.S.C. § 227(b)(1)(A). "The burden of establishing prior express consent is on the defendant," Pollock v. Bay Area Credit Serv., LLC, No. 08-61101-Civ., 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009), but "the Commission [F.C.C.] determined that 'persons who knowingly release their telephone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" Id. (citations omitted).

Plaintiff's TCPA claims are that: (1) Defendants willfully and knowingly violated the TCPA by placing forty-two (42) telephone calls using an auto-dialer to Plaintiff's cellular telephone, as Plaintiff is registered with the Federal Do Not Call List; (2) Defendant called Plaintiff without Plaintiff's permission; and (3) Defendant left a voice mail on Plaintiff's cellular telephone without Plaintiff's permission. Plaintiff also alleges that the he does not have a business relationship with GRC.

Sallie Mae contends that Plaintiff's claim under the TCPA fails because Plaintiff's proof does not identify Sallie Mae in any of the alleged calls. (Docket Entry No. 41 at 7). Sallie Mae also asserts that the last contact between Sallie Mae and Plaintiff occurred four years prior to Plaintiff's filing of this action and outside of the applicable four year statute of limitations. Id. The Court concludes that Plaintiff's proof fails to establish any calls by Sallie Mae. Thus, the Court concludes that Defendant Sallie Mae's motion for summary judgment should be granted as to Plaintiff's claims under the TCPA.

GRC first contends that Plaintiff's claims under the TCPA fail because GRC did not make

any calls to Plaintiff's cellular telephone with an auto-dialer. (Docket Entry No. 55 at 7-8). GRC's business records reflect that the calls to Plaintiff's cellular telephone were made by an individual debt collector, not by an auto-dialer. Id. at 8. GRC, however, did use an auto-dialer when calling Plaintiff's home or work telephone numbers. The evidentiary documents submitted reflect that Defendant made various automated calls to Plaintiff's home telephone number, not to Plaintiff's cellular telephone. Given that all calls to Plaintiff's cellular telephone number were dialed manually, the Court concludes that calls to Defendant's cellular telephone were lawful under the TCPA.

As to the prerecorded messages, the Court must determine whether there was appropriate express consent. Here, Plaintiff freely provided his information during the loan application process and under the terms of the loan, Plaintiff had an obligation to remedy any default. Thus, the Court concludes that GRC did not violate the TCPA's cellular telephone provisions and Defendant's motion for summary judgment should be granted.

GRC also contends that Plaintiff fails to cite any provision of the TCPA that precludes a debt collector from calling a telephone or leaving a voice mail without the owner's permission. (Docket Entry No. 55 at 8-9). GRC argues that "the TCPA does not prohibit manually dialed calls to a cell telephone regardless of whether there is permission given. . . . a complete reading of the TCPA does not reveal any prohibition against a business leaving a message on another's cell telephone." Id. Moreover, GRC asserts that Plaintiff had a legitimate debt and GRC was entitled to collect on that debt. Id. at 9. Further, Plaintiff's own telephone call log does not indicate which telephone each call was made to, how the calls were made, or whether GRC left a voice mail.

The Federal Communications Commission has exempted from the requirements relating to calls to residential telephone lines calls that do "not include or introduce an unsolicited

advertisement or constitute a telephone solicitation." 47 C.F.R. § 64.1200(a)(2)(iii). Moreover, decisional law recognizes that debt collection calls made to a residential line are exempt from the TCPA under Section (b)(1)(B). See Bates v. I.C. Sys., Inc., No. 09-CV-103A, 2009 WL 3459740, *1 (W.D.N.Y. Oct. 19, 2009). Thus, the Court concludes that Plaintiff's claims that GRC unlawfully called and left voice messages on Plaintiff's residential and work telephone lines fail and GRC's motion for summary judgment should be granted.

## C. Conclusion

For the reasons above, the Court concludes that Defendant Sallie Mae Inc.'s motion for summary judgment (Docket Entry No. 40) and Defendant General Revenue Corporation's motion for summary judgment (Docket Entry No. 54) should be granted and this action should be dismissed with prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of March, 2013.


WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court